NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

MARK B., )
)  Supreme Court No. S-16489
Appellant, )
)  Superior Court No. 1JU-14-00003 CN
v. )
)  MEMORANDUM OPINION
STATE OF ALASKA, )  AND JUDGMENT*
DEPARTMENT OF HEALTH & )
SOCIAL SERVICES, OFFICE OF )  No. 1648 – August 9, 2017
CHILDREN'S SERVICES, )
)
Appellee. )
)

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Louis J. Menendez, Judge.

Appearances: J. Adam Bartlett, The Law Office of J. Adam Bartlett, LLC, Anchorage, for Appellant. Joanne Grace, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Bolger, and Carney, Justices. [Maassen, Justice, not participating.]

Mark B. appeals the superior court's termination of his parental rights to his daughter Tabitha, who is an Indian child for purposes of the Indian Child Welfare Act

_____

\*      Entered under Alaska Appellate Rule 214.

(ICWA).[1] The Office of Children's Services (OCS) removed Tabitha from the care of her parents, Mark and Lavern, after Mark assaulted Lavern on multiple occasions, including one time when Lavern was holding Tabitha in her arms. After Tabitha was removed, Lavern continued her relationship with Mark, and Mark assaulted her several more times over the next two years.[2]

During those two years, OCS provided Mark with numerous services, including an educational program for batterers, as well as mental health and substance abuse assessments. OCS also recommended individual counseling numerous times. But Mark refused to participate, and by the time of the termination trial he was not participating in any of OCS's recommended services.

Despite Mark's refusal to participate in services, Mark argued at trial that his parental rights should not be terminated because OCS failed to make "active efforts" to prevent the breakup of the family, as required by ICWA and the Child in Need of Aid (CINA) Rules.[3] According to Mark, couples counseling would have solved the problems in his relationship, and OCS was therefore required to facilitate couples counseling before terminating his parental rights. The superior court rejected Mark's argument, finding that couples counseling was unlikely to improve Mark's violent behavior.

Mark now appeals. He repeats his contention at trial that couples counseling would have solved his domestic violence problems and argues that the superior court erred in concluding otherwise. We will overturn the superior court's

---

[1]    *See* 25 U.S.C. § 1903(4) (2012). We use pseudonyms to protect the privacy of the parties.

[2]    Lavern's parental rights were also terminated in this case. She filed a notice of appeal, but she never filed a brief and her appeal was eventually dismissed.

[3]    *See* 25 U.S.C. § 1912(d); CINA Rule 18(c)(2)(B).

factual finding on this point only if it was clearly erroneous.[4]  We find no such error in this case.

The superior court's finding was supported by an OCS caseworker who testified at trial that couples therapy is not effective in domestic violence situations.  She explained that "[d]omestic violence situations involve a perpetrator and victim," but "[c]ouples counseling is focused on both [parties] sharing responsibility."  Placing a victim in couples counseling with her abuser creates "a victim blaming situation" and would be "unsafe for [Lavern] because if she is honest in the couples counseling session, she can face repercussions afterwards."

The only witness who testified in support of couples counseling was Lavern's therapist.  But Lavern's therapist had not worked directly with Mark and was apparently unfamiliar with the full scope of Mark's domestic violence.  The therapist testified that she only knew about a single violent incident between Mark and Lavern, which she characterized as "an isolated incident of an angry outburst."  Given the therapist's lack of familiarity with Mark and his history of domestic violence, and given the caseworker's testimony that couples counseling is ineffective (and potentially dangerous) in domestic violence situations, the superior court did not clearly err in finding that couples counseling was unlikely to improve Mark's violent behavior.

Mark makes one other argument on appeal:  that the superior court erred in finding that Tabitha was in need of aid because of his regular marijuana use.[5]  But the superior court found that Tabitha was in need of aid for three additional reasons,

---

**4**     *Philip J. v State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 314 P.3d 518, 526 (Alaska 2013) (noting that whether OCS made active efforts is a mixed question of law and fact, and that we review factual findings supporting the active efforts determination for clear error).

**5**     *See* AS 47.10.011(10) (substance abuse).

including, most notably, Mark's pattern of domestic violence.[6] Generally, we will not consider challenges to a single child-in-need-of-aid finding when the superior court finds that a child is in need of aid on two or more alternative grounds and the parent leaves any one of those grounds unchallenged on appeal.[7] We therefore decline to consider Mark's challenge to the superior court's finding that Tabitha was a child in need of aid based on his marijuana use.

For the reasons explained above, we AFFIRM the superior court's termination of Mark's parental rights.

---

[6]    *See* AS 47.10.011(8) (mental injury due to exposure to domestic violence). The superior court also found that Tabitha was a child in need of aid under AS 47.10.011(9) (neglect) and (11) (parental mental illness).

[7]    *Alyssa B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 165 P.3d 605, 618 (Alaska 2007).